The next case on the calendar is the United States v. Frazier. Good morning, Your Honors. I'm Vivian Shevitz. I'm appointed to represent Melvin Frazier on this appeal. It is Mr. Frazier's position that the Court should have allowed him to withdraw his guilty plea because it was based on a knowable fact concerning the minimum sentence, and that fact was not true. It was a fact that the government advised was true and Mr. Frazier's own counsel advised was true. And as the government states in its Appendix 38, which was its response to the motion to withdraw the plea, nobody considered the possible enhancements at that time because there was a career offender status. But, I mean, the plea agreement contemplates that the Court might come up with a different guidelines calculation, but it's a Rule 11c1c plea. Yes. So as long as the Court sentenced within the range that the parties agreed to, the remedy is not to get out of the plea, right? It's sort of the Court might go anywhere, but as long as you're sentenced from 188 to 235, that's the deal, right? No, because the plea was premised. The plea to ---- But it's notwithstanding the above calculations. I hear that. There were stipulated facts and stipulated guidelines, but those guidelines don't control in the event that the Court reaches a different conclusion, right? But the amount, the size of the sentence, the amount of months is not the real issue here. The real issue is appellant's, defendant's right to go to trial if he wants and his decision to plead guilty based on facts that are not true. Now ---- Could I ask you? I'm sorry. Sure. Just to go back to how you opened, you said that the problem was this knowable fact. Correct. Could you just specify what you mean by that knowable fact? The knowable fact was that he was not a career offender, and therefore, the minimum ---- there was no minimum sentence if he was not a career offender. When he was told by his counsel and the government that he was a career offender, that meant there was a minimum sentence. The case I cite, I believe in the reply brief around page six or so, the knowable fact about being an alien, that was a knowable fact, and false information, wrong information about that fact induced a plea. Here, the fact that there would be a minimum career offender minimum sentence is what induced my client's plea. You mean, when you say minimum, you're talking about just a guidelines minimum. A guidelines level 34 career offender status. And because ---- I guess I'm just struggling with the idea of a knowable fact as opposed to just a legal opinion about whether or not the various facts played out in a legal way. I mean, that's a legal conclusion about how the guidelines would apply. No, there was no legal conclusion because if one is a career offender, the guideline level, the minimum guideline level is 34. And so that is what my client heard. That is what my client knew. And that is the basis. Now, I don't know why entirely. I don't know what was in his calculus, in his mind, but he opted to plead sentenced as a career offender, which was false information knowable by the government and the defense lawyer, and wrong. It was wrong. And it sounds to me like the argument you're making sounds an awful lot like an ineffective assistance claim. Yes. So is that before us or is that a habeas issue? No. It's before you because he raised that in moving to withdraw his plea. Is there a full factual record? I mean, usually under Massaro, we don't deal with 2255 issues. That would be the sort of thing that would require factual development of the record, no? No. The factual development was the lawyer, his prior lawyer, a respected lawyer in that district, admitted that he had relied on the government to — for his belief at that time that Mr. Frazier was a career offender. I don't think there's any dispute about that. How about the aspect of prejudice? I mean, your client agreed to — the government says agreed to a guidelines range of 188 to 235 months. When the recalculation is done, his guidelines range is lower, and he is sentenced within that range. Yes. Within both ranges. He wants to go to trial. He wants to go to trial. That was his right, even if we all think it's crazy? So your view is that any time the parties make a mistake in a guidelines stipulation, then the remedy is withdrawal of a plea and you get to go to trial. But this is not any mistake in the guideline calculation. This is a mistake in whether he is a career offender and whether he wants to roll the dice given the — But that is a guidelines calculation. I mean, you can call it the offense level under, you know, drug quantity. You can talk about enhancements. You can talk about career offender. Those are all subsets of guideline calculations. Well, in the case — I think it's called Leeson. The client's understanding of what he's going to get is really the controlling factor and what's at issue in his sentencing. But the district court sort of painstakingly went through and said, I don't know that I'm going to agree with these guidelines calculations. And the plea agreement specifically says that if the court doesn't agree, that's not a basis to withdraw your plea, right? Yes. And the cases mostly concern whether there's a — an error in assessing the guideline calculation or an opinion about the guideline calculation. This is not that. This is a total error, which was agreed — which was the defense counsel confirmed. The trial judge appointed a new lawyer when that happened, although he stated that he thought the first trial lawyer was good and was — was — was — did a good job. My client felt otherwise because he thought he was a career offender and chose to — a course of action based on that. In Ferretta, a guy is — should be — is allowed to represent himself, the Ferretta case, even though he makes a stupid decision. And the client's choice to do something has to be informed and voluntary. So can I just — I — I came here today expecting a different argument. I — it sounds like what I'm hearing is when you're saying that he wants to go to trial. He wants to go to trial. That's usually a claim that we would evaluate sort of in terms of prejudice, right? The question on prejudice, we would say, you know, is there any evidence in the record showing that but for that — the fact that you said, the noble fact, but for the mistake in the advice he received, would he have pled guilty or not? And then I think if you make that argument, it feeds right into the government's response into why would he not plead guilty, knowing that he's actually potentially facing a lower guidelines range. Because usually if things get better for you in that sense, you are more likely to plead guilty. I thought what you were going to argue was that the district court somehow rejected the plea agreement and under 11C1C, once that plea agreement was rejected, he would then have an undisputed right to withdraw that. So you're not making that argument? You're not making that argument. The judge did not reject the plea agreement. The plea agreement was just premised on a knowable fact concerning minimum sentence that drove and concededly — I don't know, I wouldn't say concededly, but right after my client learned that those were not going to be the way the guidelines were calculated, that he was not going to be a career offender, that therefore enhancements were not irrelevant, he wanted to go to trial and roll the dice. It may be a stupid thing to do, but he pled guilty premised on a calculation — not a calculation, but a fact that he was a career offender. That fact, a knowable fact, was not correct. And whether he gets, you know, convicted after a retrial — after a trial or not, he wanted to go to trial. I see my time is up, but the thing that would have made a difference to him is he wanted to be able to contest the quantities they were now charging when the enhancement — when the career offender didn't apply. He wanted to be able to contest that and cross-examine the witnesses. Because it happened the way it happened, he had to cross-examine this co-operator in the context of a plea withdrawal and didn't have discovery and wasn't able to really show that the guy — he wasn't disclaiming all liability, either. He wasn't denying a connection. He was denying a specific conspiracy charge. Yes. So I — we understand your argument. So he — these enhancements, he wanted to litigate when he thought that it didn't make any difference at all. He was willing to plead guilty, but once they came back into play, he wanted to go to trial. But he didn't say he wanted to go to trial, right? He said, if I had known I wasn't a career offender, I'm not saying I would not have pleaded out, but I would have definitely tried to get a better deal. That's not saying I want to go to trial. That's saying I would have negotiated differently. Well, Judge, in the real world out here, when you're negotiating a plea agreement, you don't — I mean, yes, you may have gone to trial, but if the government comes back and says, I'll give you five months, you know, that's extreme. But if the government says that, I'm not saying I wouldn't plead to that. In other words, I'm not saying I'm totally innocent. So yes, I may plead out, but these are the facts on the ground. I was told by esteemed counsel and esteemed U.S. attorney that I was a career offender with a minimum sentence and no enhancements to consider. Now I am not, and I want to go to trial. Maybe I'll plead out. If this induces the prosecutor to say, I'll give you a much lower sentence, I don't think it will either. But the guy has a right to do that. I mean, he opted to waive those rights, and he didn't want to on these circumstances. Good morning, and may it please the Court. My name is Charles Crooley, and I represent the United States. Your Honors, the government recognizes the unusual path this case took before the district court, but there is still a basis to affirm on each of the issues the appellant has raised. The first question presented, the motion to withdraw the plea, the central issue, the central question is whether the appellant has shown with objective contemporaneous evidence that he would have gone to trial but for the party's mutual mistake about the guidelines calculation, and he has not met that burden. The only evidence in the record that shows that desire is an affidavit the appellant submitted to the district court over 18 months after pleading guilty, where he says that if he had known he was not a career offender, he would have gone to trial. Not only, as Judge Sullivan noted, did he largely recant those statements at sentencing, but this Court has held, and Arteca-Gonzalez, among other cases, which we cite in our brief, that an affidavit like that is generally insufficient to show prejudice in this context, at least if there's no other evidence in the record showing that the defendant would have gone to trial. And there is no other evidence in this case. Roberts. Are you applying a Strickland standard here? Is that what you're doing? Fisher. Correct, Your Honor, which comes from Hill v. Lockhart and the Supreme Court's decision in Lee from a couple terms ago. Alito. All right. But this is a situation where he moved to withdraw a guilty plea after it turned out that the guidelines were incorrect. Fisher. Correct. Alito. Notwithstanding the fact that the district court said, I'm not saying that these guidelines are correct, and you understand that if I reach different guidelines calculations, you can't withdraw your plea. Fisher. Correct. Alito. So, I mean, why isn't that the end of the inquiry? Fisher. That is the end of the — that can be the end of the argument, Your Honor, and that's this Court's decision in Rosen, which we also cite in our brief, that a mutual mistake about the guidelines is not a sufficient basis to allow a defendant to withdraw a plea as long as he knows his options for withdrawing from the plea, which, as Your Honor referenced in paragraph 13 of the plea, he did, and as long as he knows that the guidelines are not binding on the district court, which, again, was the case here in paragraph 13 of the plea agreement. Alito. I mean, this is a C1C plea under Rural Elect, and so the parties stipulated to a range. Now, it could be that the district court was going to conclude that that range was way too high or conclude that it was way too low, but as long as the judge sentences within that range, that's the deal between the parties, right? Fisher. That's correct. And the appellant accepted the risk that the guidelines would come out differently when he entered into his plea, and that's the purpose of paragraph 13 of the plea. It puts the defendant on notice that the guidelines could differ, the court could calculate the guidelines differently than the parties had calculated, but as long as he receives a sentence within the C1C range, there is no basis to withdraw. The way these pleas operate is that the crux of the acceptance is just the district court entering a judgment, sentencing within that range. In all other respects, the district court can reject all the other calculations in the agreement because there's a way of thinking about this as essentially the district court did sort of, as the events transpired, end up rejecting the great bulk of the factual agreement of the parties in the agreement, I mean, we end up with a much higher guidelines range, a much different drug quantity, there's an obstruction of justice finding. That may all be fine, but it's on the theory that so long as the sentence is within that range, the district court has accepted the agreement. That's correct, Your Honor. And that's paragraph 10 of the plea, this is Government Appendix 9, which says that notwithstanding the parties' guidelines calculations, the parties agree pursuant to Rule C1C that the court at the time of sentence imposes a term of imprisonment between 188 and 235 months. So that's the, as Your Honor said, that the crux of the argument is the number, the ultimate number, not how the parties arrived at that number, not whether they included the Chapter 2 and Chapter 3 enhancements for drug quantity or obstruction or those other guidelines. But going back to my original point, even setting aside the mutual mistake argument, the appellant still hasn't shown, regardless, that he would have gone to trial had he known of the correct guidelines calculations. And it would make no sense in this case for him to have gone to trial, given his dispute with the government about drug quantity. The appellant pled guilty to conspiring to traffic 100 grams or more of heroin. He has never disputed that he's guilty of that quantity. His dispute is whether he can prove or whether the government can prove the much higher quantity of 800 grams. But going to trial doesn't get the defendant any further towards contesting that 800-gram threshold. As the Court's aware, that 800-gram threshold would be a sentencing finding that would be resolved, as it was here, at a FATICO hearing. So going to trial doesn't give the defendant the opportunity to contest that 800-gram threshold. At most, going to trial in this case would give the appellant the ability to cross-examine the cooperator, Terry Decker, with this letter. But as my friend stated, that letter doesn't absolve the appellant of all liability for trafficking heroin. It just narrows the scope of the conspiracy. So his chance of an acquittal, even cross-examining the cooperator with that letter, his chance of an acquittal is slim, and we'd be back in the same position we are now, where he's almost certainly convicted of count three, and the District Court still has to conduct a FATICO hearing to find drug weight, based on the testimony of Terry Decker, the cooperator. On the second issue, Your Honors, the argument that the government breached the plea agreement, as the Court's aware, the central question here is whether the government violated the defendant's reasonable expectation and understanding with regards to the plea. And as this Court stated last year in Wilson, determining the party's reasonable expectation and understanding is based not only on the terms of the plea, but on the party's behavior before the District Court. And the party's behavior in this case shows that what was important to the parties and what was important to the defendant was the sentence, the ultimate sentence, not how the parties arrived at that calculation. The AUSA, whose case this was below, stated three times on the record at various points that the parties had agreed to leave particular guidelines, calculations under Chapters 2 and 3 out of the plea because it didn't matter, given the defendant's career offender status. And, in fact, at one point, the AUSA stated that the drug quantity in the factual basis of the plea was a point of contention between the parties. And given that it was a point of contention, the parties had essentially agreed to disagree. They put in the lower number because it didn't matter. Yeah. I need to ask about that. Yes. I don't understand what that means. First, they agreed to disagree, and, therefore, they stipulated to a number. How does that constitute an agreement to disagree? It sounds to me like an agreement to agree. How is it that the government gets to come back later and say, yes, we stipulated to it, but it doesn't really matter, we made it up at the time, and now we feel free to disregard it? How does that work? Your Honor, Paragraph 15B of the plea, and this is at Government Appendix 11, gives the government the right, at the time of sentencing, to respond to arguments by the defendant that are inconsistent with evidence available to the government. And I acknowledge the unusual posture this case is here. Right. Because when you agree to something and it turns out that the facts are different, doesn't the government usually, at sentencing, say, yes, Your Honor, you are correct because you have asked me. There is evidence that the drug quantities are higher. Nevertheless, notwithstanding that subsequent evidence, we adhere to our earlier position, and we continue to advocate for the amount that we agreed to. Wait, wait. Where in this agreement did they agree to 100 grams or more? They agreed that the elements are 100 grams or more, right? It's Paragraph 4B of Government Appendix 7. Right. At least the parties agree, the defendant and the government agree to the following facts, and that it lists at least 100 grams, but less than 400 grams of heroin. Right. So they're agreeing it's less. Correct. Right? Correct. So they're saying, we agreed it was less, but we can argue it's more. Now, I understand there may be an argument that he breached the plea agreement, and then that frees you up. And I also understand the idea that if the judge asks you later, you can say, well, you know, it's more. But I guess I'm just kind of curious why the government's position was, it didn't matter what that number was. It was irrelevant, and therefore, we agreed to it. It was because the parties thought the defendant was a queer offender, and the drug quantity would not have affected the guidelines calculation. You know, I get that. But then why do you stipulate to something that you say, I didn't care? It sounds like a sort of reckless disregard for the truth, right? I didn't care whether it was true. It didn't matter. Therefore, we put whatever we felt like in there. That's kind of what it sounds like they're saying, which is troubling. Your Honor, and I understand that, Your Honor. And I didn't handle this case below, but my understanding, it was simply, as the AUSA below stated, a point of contention in plea negotiations, and it ultimately didn't matter. And if essentially it got the deal done, it was the lower drug weight was put into the plea agreement. Is the government fact bargain? Is the government supposed to fact bargain? No, generally not, no, Your Honor. Okay. So, I mean, again, whether or not that has an impact on the outcome of this case is another question, but you may want to have that discussion. I will convey the message, Your Honor. And I see my time is almost up. Unless the Court has further questions, we'll rest on our papers. Thank you. Further to what you were saying, Judge Nardini, our contention is that the government breached the plea agreement by advocating for the enhancements that were ultimately added. They didn't have to do that. If plea agreements rest on that slim reed, then they are illusory. This agreement is illusory if it allows the government to say, okay, well, we can argue later. Now, the factual basis wasn't only 100 to 400 grams, but the defendant understood that that was the amount, quote, which could be readily proven by the government against the defendant, which also meant that it had qualms itself about relying on Decker because it knew about Decker before and about the increased quantities. So unless it recklessly throws numbers like this into plea agreements to induce a plea and then should be able to disclaim them later based on anything, based on something, but based on anything, well, the Wilson case says you can't do that. Did the defendant breach the plea by threatening a witness and trying to coerce false testimony? That happened. If he didn't coerce, first of all, we disagree that he coerced. No, I know. Based on the findings of the district court, not that you have to agree with the findings. Well, in our brief, I discussed the deficiencies in those findings at length, and I guess I don't have time to argue them. I'm assuming for the sake of argument that those findings are not clearly erroneous. Okay. Did your client breach the plea agreement? I don't think so. He pled guilty. He accepted responsibility. He contested the amounts, really. Paragraph 27, which is on Government Appendix 15, that's a condition of the agreement that up through the date of the defendant's sentencing, the defendant shall commit no further crimes. Would that include, say, suborning perjury? Obstructing justice? Well, first of all, the letter that Decker wrote was in 2015, days after the defendant was arrested initially. So it's pre-dates. Your argument would be that if it's a crime, it pre-dates the plea agreement. He wasn't going to use it, my client, because quantities were irrelevant then. Did he use it after pleading guilty? Yes, he did. So one could view that as obstructing justice would be crime. Well, I contest the obstructing justice, but I don't think that breaches the plea agreement. As the Wilson case in this Court stated, if the government thinks that a defendant after a plea committed obstruction, they should charge him with that and not breach the plea agreement by advocating quantities that it didn't advocate before based on facts known to the government at that time. I just want to stress that this is just not a, quote, mutual mistake about the guidelines. Rather, it is a mistake about the minimum period of incarceration. No, it's a mistake about the criminal history, right? Yes. Right? So this conviction was not a crime of violence. I don't know how anybody could have missed that. But in any event, it's a mistaken calculation of criminal history that yields a guidelines range that's incorrect in your view, right? Yes. But doesn't the – didn't the plea colloquy and the agreement itself contemplate that the Court might reach a different conclusion on criminal history? It did not really contemplate that. It contemplated reaching a different discussion, different consideration of the guidelines. Yes, criminal history could be obviated, but this is more basic than that. This is whether a defendant wants to plead guilty. He has to know what's going on. This is about ineffective of counsel – ineffective assistance. Why is this any different than, you know, a mistake about the applicability of a gun enhancement or a mistake about a role enhancement? I'm not sure why one mistake would yield withdrawal of a plea agreement and a plea, and another wouldn't. Well, at the cases I cite on page 6 of my reply brief, Leeson v. Damon, which is cited in another case, page 4, Ternullo, but the Court says improper advice about a minimum sentence, which is a factor that the defendant had to pay. But your view is that a guidelines minimum – that the low end of the guidelines range is a minimum sentence? The level 34 for career – It's not a minimum sentence, right? Minimum sentence is when there's a mandatory minimum under the law. The guidelines are advisory. There's no minimum sentence. My client believed that this was a minimum sentence that he was to have to get, and apparently the government agreed, too, because that's why it didn't bother calculating any enhancements or quantity. Under the guidelines, if you are a career offender, then your offense level is going to be automatically 34. Okay. And so it doesn't matter what the weight is unless it's going to be higher than 34, right? Okay. Well, and so, look, it seems to me there was a negotiation here about a guidelines range. How you got there could be second-guessed. The agreement contemplates that. Well, here's what the Court says. If Hill was confused about the minimum period of incarceration, lease and controls, misinformation about statutory minimum, or any other fact that's knowable, counsel is not being second-guessed about a prediction, which is proven inaccurate, but rather a misstatement of easily accessible fact. Here, counsel said you were a career offender, but based on a 2009 case, and the government said so, too, you're not a career offender. Whatever that meant in my client's mind is a little bit open to interpretation and to discussion. I don't know exactly. I know he wanted to go to trial after he learned he was not a career offender, and the fact that he got 188 months through a sentencing manipulation, kind of, when the government endorsed the quantities, well, the government breached the plea agreement, too. It is clear on this record that after the mistake was discovered, I'm just going to call it the mutual mistake for the moment, the government continued to advocate for 188 months until the letter emerged. Correct. And at that point, it should have charged him with obstruction and not had a sentencing hearing at which they called a witness and he wasn't given an opportunity to thoroughly cross-examine him based on evidence that would have been obvious and apparent at a trial. He wants to go to trial. Thank you. Thank you both. And we will take the matter under advisement. Well argued.